# **<u>EXHIBIT D</u>**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIK CROWL, KEITH WADE, ERIC O'REILLY, ALTON PARKER, STEVEN HEY, NATHAN COHEN, SAMUEL GLICK, FARSHID SEPASSI, ROBERT NEELY, ANTHONY WATSON, TYLER HANDLEY, QWNTM CAPITAL LIMITED LIABILITY LIMITED PARTNERSHIP, DAVID WARD, ANDRE PAEZ, and SALEM ALOBAID, | **Case No. 1:22-cv-7313-VSB** |

     *Plaintiffs*,

v.

STRONGBLOCK, DAVID MOSS, BRIAN ABRAMSON, COREY LEDERER, KONSTANTIN SHKUT, AND JOHN DOE DEFENDANTS 1-5,

     *Defendants*.

## <u>DECLARATION OF ANDREW JOHNSTONE</u>

I, Andrew Johnstone, declare:

1.      I am a partner with the law firm Harney Westwood & Riegels (**Harneys**) in its Cayman Islands office.

**Background**

2.      I am the head of Harneys' Litigation, Insolvency and Restructuring group in the Cayman Islands.

3.      As a Cayman Islands litigator, I specialize in fraud and asset tracing, asset preservation and enforcement, shareholder disputes, contentious trusts and insolvency. I have particular experience in cross-border and multi-jurisdictional litigation, including obtaining recognition orders, and all forms of interim relief including disclosure orders, freezing injunctions, anti-suit injunctions and search orders.

4.      I have a wide range of arbitration experience, including acting as advocate and counsel in arbitrations conducted under the rules of most leading arbitral bodies, including ICC, LCIA, HKIAC, SIAC and CIETAC.

5.      I was called to the Bar of England & Wales in 2004 and lived and worked in Hong Kong from 2012 until moving to the Cayman Islands in September 2022.

6.      I have the following bar admissions: England and Wales (2004), Hong Kong (2014) (not practicing), British Virgin Islands (2018), and Cayman Islands (2022).

7.      I obtained an undergraduate degree from Durham University (BA) in 2001, and postgraduate qualifications in law from City University in 2003, and the Inns of Court School of Law in 2004.

8.      A copy of my CV is attached hereto as exhibit A.

**Opinion**

9.      I have been asked to provide an opinion on whether claims for violations of the U.S. Securities Act can be vindicated in an ICC arbitration in the Cayman Islands governed by the internal laws of the Cayman Islands without regard to choice-of-law rules.

10.     In forming my opinion on this matter I have reviewed the Complaint filed by Plaintiffs and the Motion to Dismiss filed by Defendants in this matter, including all the exhibits attached thereto.

11.     Based on my experience, including my admission to the bar of the Cayman Islands and my experience in ICC arbitrations, it is my opinion that Plaintiffs' claims for violations of the U.S. Securities Act could not be vindicated in an ICC arbitration, or any other proceeding, brought in the Cayman Islands applying the internal laws of the Cayman Islands without regard to choice-of-law rules.

**Summary of opinion**

12.     The Cayman Islands provides a broad jurisdiction to parties seeking to resolve their disputes by way of arbitration. Section 26(1) of the Cayman Islands Arbitration Act 2012 (***Arbitration Act***) provides:

> *26. (1) <u>Any dispute that parties have agreed to submit to arbitration under an arbitration agreement may be determined by arbitration</u> unless the arbitration agreement is contrary to public policy or, under any other law of the Islands, such a dispute is not capable of determination by arbitration.* (Emphasis added)

13.    However, this broad jurisdiction is constrained by the terms of the arbitration agreement to which the parties have agreed, and under the terms of the Arbitration Agreement between the parties in this particular dispute (set out below), the Arbitrator would be required to apply Cayman Islands and not US Federal Securities Law to the Plaintiff's claims.

14.    The case of Eisen v. Venulum Ltd., 244 F.Supp.3d 324 (2017) a decision of the United States District Court, W.D. New York, considered similar issues in the context of a British

Virgin Islands' (**BVI**) arbitration agreement.  In that case, the US court held that a Plaintiff's claim under US Federal Securities law could not be vindicated in an arbitration in the BVI applying the internal laws of the BVI.  As a matter of Cayman Islands' law, the position would not differ from the position in the BVI (whereby, based on BVI expert law advice that US Federal Securities law would not apply to an arbitration governed exclusively by BVI law, the US Court found that applying BVI law would stifle the Plaintiff's right to pursue US statutory remedies).

15. It is therefore my view that the Plaintiffs would not be able to effectively vindicate such US federal rights as they may have in the arbitration forum (or any other forum) where internal Cayman Islands laws are applied.

**Arbitration in the Cayman Islands**

16. The Arbitration Act incorporates and is modeled on the UNCITRAL Model Law on International Commercial Arbitration (the ***Model Law***).

17. Under the Arbitration Act, an arbitration agreement is defined as: *"an agreement by parties to submit to arbitration all or certain disputes which have arisen or which may arise between them in respect of a defined legal relationship, whether or not contractual"*.

18. Section 4 of the Arbitration Act sets out further guidance on the form and content of an arbitration agreement:

> *4. (1) An arbitration agreement may be in the form of an arbitration clause in a contract or in the form of a separate agreement.*
>
> *(2) Parties may agree to adopt or adapt the model arbitration clause provided in the Schedule if they are unable to independently formulate an appropriate arbitration clause for the purposes of arbitral proceedings.*
>
> *(3) An arbitration agreement, except as provided for in subsections (4) and (5), shall be in writing and contained in-*

3

> *(a) a document signed by the parties; or*
>
> *(b) an exchange of letters, facsimile, telegrams, electronic communications or other means of communication that provide a record of the agreement.*
>
> *(4) Where in any arbitral or legal proceedings, a party asserts the existence of an arbitration agreement in a pleading, statement of case or any other document in circumstances in which the assertion calls for a reply and the assertion is not denied, there shall be deemed to be an effective arbitration agreement as between the parties to the proceedings.*
>
> *(5) An arbitration agreement which forms, or was intended to form part of, an agreement shall be treated as a distinct agreement.*
>
> *(6) An arbitration agreement is not void, voidable or otherwise unenforceable only because the agreement of which it forms part is void, voidable or otherwise unenforceable.*
>
> *(7) A dispute about the validity of an agreement which includes an arbitration agreement may be arbitrated in accordance with that arbitration agreement.*

19. Section 26 of the Arbitration Act sets out the circumstances where an arbitration agreement will be invalid (emphasis added):

> *26. (1) Any dispute that parties have agreed to submit to arbitration under an arbitration agreement may be determined by arbitration <u>unless the arbitration agreement is contrary to public policy or, under any other law of the Islands, such a dispute is not capable of determination by arbitration.</u>*

20. Accordingly, an arbitrator appointed with the seat of the arbitration in the Cayman Islands has a broad jurisdiction to determine "any dispute" provided it is not contrary to public policy or incapable of determination by arbitration.

**The arbitration agreement**

21. I have been shown the Terms of Service document contained at Exhibit A-2 to the Defendant's preliminary statement filed on 14 October 2022.  The Terms of Service contains the Arbitration Agreement at pages 3 to 5.  The relevant parts of the Arbitration Agreement are as follows:

> *FOR RESIDENTS OF THE UNITED STATES…YOU AND StrongBlock AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY BETWEEN YOU AND StrongBlock ARISING IN CONNECTION WITH OR RELATING IN ANY WAY TO THESE TERMS OR TO YOUR RELATIONSHIP WITH StrongBlock AS A USER OF THE SERVICE (WHETHER BASED IN CONTRACT, TORT,STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, AND WHETHER THE CLAIMS ARISE DURING OR AFTER THE TERMINATION OF THE SERVICE) WILL BE DETERMINED BY MANDATORY BINDING INDIVIDUAL (NOT CLASS, REPRESENTATIVE, OR ACTION) ARBITRATION.*
>
> *…*
>
> *Absent a contrary decision of the arbitrator or otherwise required by applicable law, the parties agree that the seat and venue of the arbitration is the Cayman Islands.*
>
> *…*
>
> *As modified by these Terms, and unless otherwise agreed upon by the parties in writing, the arbitration will be governed by the ICC's Arbitration Rules including its Expedited Procedure Provisions (collectively, the "Rules and Procedures").*
>
> *…*
>
> *These Terms and all Disputes (as defined below) are governed by and will be* ***construed and enforced in accordance with the internal laws of the Cayman***

*Islands without regard to choice-of-law rules.*

(emphasis added).

22. Pursuant to the above, an arbitrator appointed pursuant to the Arbitration Agreement is required to apply Cayman Islands law to the claims made by the Plaintiffs under section 5 and 12(a)(1) the Securities Act, which are set out at Counts I and II of the Complaint. There are no statutory provisions identical to these sections under the laws of the Cayman Islands.

23. Given the terms of the Arbitration Agreement, and in particular the requirement that the arbitrator determine all disputes in accordance with the internal laws of the Cayman Islands without regard to choice-of-law rules, an arbitrator appointed in the Cayman Islands under this arbitration agreement would not be able to apply US securities law to any part of the dispute.

**Eisen**

24. I have been provided with a copy of Eisen v. Venulum Ltd., 244 F.Supp.3d 324 (2017) (***Eisen***).

25. In Eisen, the Plaintiff, a citizen and resident of New York, filed a claim in the US District Court claiming, inter alia, violations of both the Securities Act of 1933 and the Securities Act of 1924.  The Plaintiff's claims arose out of the Plaintiff's investments with the Defendants (Venulum Ltd & Ors).

26. A motion to compel arbitration was before the US District Court and the Court held that because the arbitration provisions were substantively unconscionable and would require the Plaintiff to forego his rights and remedies under the applicable securities law of the United States, the motion to compel arbitration was denied.

27. There were three contracts (containing arbitration clauses) that were considered, however the Court found that only the Third Contract's arbitration clause was enforceable (yet the Court went on to consider both the Second and Third contracts).

28. Relevantly, the arbitration clause of the Third Contract provided:

> "In the event that any dispute whatsoever arises between [Plaintiff] and
> [Venulum] in relation to or in any way in connection with the Contract, [Plaintiff]
> and [Venulum] hereby agree that such dispute shall be finally settled by binding
> arbitration in the British Virgin Islands applying British Virgin Islands law in
> accordance with the Rules of Arbitration of the International Chamber of
> Commerce ("ICC Rules")."

29. The Plaintiff challenged the validity of the of arbitration clause on various grounds:

> "Plaintiff's main argument—beyond his arguments against provisions which have
> been waived by Defendants—is that both arbitration clauses are unconscionable
> because the selection of BVI law as the law of arbitration precludes Plaintiff from
> any protections as an investor under federal or state securities laws...Plaintiff
> alleges that BVI law precludes the application of federal securities laws, and the
> "principal reason" for Defendants' desire to arbitrate according to the clauses in
> the Second and Third Contracts is "to evade United States law and courts."

30. The Court held:

> "The "arbitration agreement fails for the fundamental reason that it purports to
> renounce wholesale the application of any federal law to the plaintiffs' federal
> claims."...Although Defendants are correct that "[t]here is no limitation under ...
> federal case law that limits an arbitration panel in the [BVI] from adjudicating"
> securities claims, under the terms of the contracts, the panel would apply BVI,
> and not federal securities law to Plaintiff's federal securities law claims. (See id.
> at 8). Plaintiff must be able to effectively vindicate his federal rights in the
> arbitration forum selected under the investment contracts. See Am. Express, 133
> S.Ct.at 2310.  The arbitration clauses in the Second and Third Contracts require
> Plaintiff—through submission of his federal securities claims to arbitration
> applying BVI law—to forgo any application of the federal law protections
> provided to him."

31. Without offering any view on the Court's determination of questions of US law in *Eisen*, in my view there is no distinction between the underlying principles of BVI law relied on by the judge in that case, and the principles of Cayman Islands law applicable to the present case.

**Conclusion**

32. For the reasons set out above, my opinion is that an arbitration in the Cayman Islands could hear and determine claims for violations of the U.S. Securities Act if choice of law rules determined application of U.S. law was appropriate.  However, as the Terms of Service here require an ICC arbitration in the Cayman Islands governed by the internal law of the Cayman Islands *without regard to choice of law rules*, and taking into account the decision in Eisen, it is my opinion that the Plaintiffs' claims for violations of the U.S. Securities Act cannot be vindicated by an arbitrator appointed in the Cayman Islands under this specific arbitration agreement.

33. I am being compensated at the rate of USD1,215 per hour for my work on this matter. My compensation is not affected by the outcome.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 14, 2022

Andrew Johnstone

8

## ANDREW MARK ST GEORGE JOHNSTONE

## HARNEY WESTWOOD & RIEGELS, 3RD FLOOR, HARBOUR PLACE, 103 SOUTH CHURCH STREET, GRAND CAYMAN, PO BOX 10240, KY1-1002

### Bar Admissions

| | |
|---|---|
| **10/2022** | General Admission as Cayman Islands Attorney |
| **12/2018** | Admitted as barrister (BVI) |
| **05/2014** | Admitted as solicitor (Hong Kong) |
| **07/2004** | Called to Bar (England & Wales) |

### Employment

| | |
|---|---|
| **09/2022-** | Partner, Head of Litigation Insolvency & Restructuring, Harney Westwood & Riegels Cayman Islands |
| **08/2018-08/2022** | Partner, Harney Westwood & Riegels, Hong Kong |
| **04/2013-08/2018** | Partner, Holman Fenwick Willan, Hong Kong |
| **04/2012-04/2013** | Associate, Holman Fenwick Willan, Hong Kong |
| **06/2007-03/2012** | Associate, Holman Fenwick Willan LLP, London |
| **10/2005-09/2006** | Pupil Barrister, Old Square Chambers, London |

### Specific Experience

**Harney Westwood & Riegels (2018 to present)**

Partner practicing Cayman Islands and British Virgin Islands law covering a wide range of industries and types of cross-border commercial disputes, principally concerning PRC-based corporates, high net worth Hong Kong families, and foreign (especially US) investors in PRC business. Specific expertise in high-value contentious insolvency and shareholder disputes, especially those with an arbitration element.

**Holman Fenwick Willan (HFW) (2007-2018)**

Associate, and from 2013 partner practicing in London and Hong Kong in shipping, derivatives, commodities, fraud and insolvency. Heavy focus on arbitration, including arbitrations as counsel under rules of HKIAC, LMAA, CIETAC, ICC, LCIA, SIAC.