# **EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIK CROWL, KEITH WADE, ERIC O'REILLY, ALTON PARKER, STEVEN HEY, NATHAN COHEN, SAMUEL GLICK, FARSHID SEPASSI, ROBERT NEELY, ANTHONY WATSON, TYLER HANDLEY, QWNTM CAPITAL LIMITED LIABILITY LIMITED PARTNERSHIP, DAVID WARD, ANDRE PAEZ, and SALEM ALOBAID,

*Plaintiffs*,

v.

STRONGBLOCK, DAVID MOSS, BRIAN ABRAMSON, COREY LEDERER, KONSTANTIN SHKUT, AND JOHN DOE DEFENDANTS 1-5,

*Defendants.*

Case No. 1:22-vc-7313

## DECLARATION OF HAMID KHANBHAI

I, Hamid Khanbhai, hereby declare:

1. I am a Partner at Campbells LLP, where I have been employed for approximately six years, and specialize in commercial dispute resolution, insolvency and restructuring. I practise as an attorney in both the Cayman Islands and the British Virgin Islands ("BVI"), where my firm has offices. I have been asked by the Defendants to give this declaration.

2. I have undergraduate and graduate degrees from Oxford University. My post-graduate qualifications in law were from City University. I was called to the Bar of England & Wales in 2011 where I practised as a barrister from Chambers at 4 New Square, which is a well-known commercial set of Chambers. Having left Chambers in 2021[1], I am now a non-practising barrister in England & Wales and remain a member of the Inner Temple, which is one of the Inns of Court.

---

[1] I retained my full membership in Chambers for a several years while I was employed at Campbells.

3.     I have been admitted to the Bars of England & Wales, the Cayman Islands, and the BVI. In practice in England, the Cayman Islands and the BVI, I have advised and acted for clients engaged in arbitrations conducted under a wide variety of arbitral rules, including ICC, LCIA, LMAA, JAMS, and AAA.

### A.     Instructions

4.     I have been asked by the Defendants in this proceeding to provide an opinion on the following in relation to the Terms of Service ("TOS") and the arbitration agreement contained within it:

   (a)     What principles are relevant to a determination of the law applicable to the arbitration agreement and what is the applicable law of the arbitration agreement?

   (b)     What law applies to the substance of a dispute referred to an arbitration under the arbitration agreement?

   (c)     Have the parties to the arbitration agreement chosen any law to apply to the substance of a dispute that arises (if any) under Sections 5 and 12(a)(1) of the US Securities Act of 1933 ("US Securities Laws", "US Securities Law Claims")?

   (d)     Have the parties excluded vindication of US Securities Law Claims (if any arise)?

   (e)     If so, are there comparable remedies for similar wrongs, under Cayman Islands law?

5.     I am instructed that one of the issues in dispute between the parties is whether the US Securities Laws have any application to this case. In this opinion, without prejudice to the Defendants' position that they do not apply, I am instructed to answer the questions above on the assumed basis (for these purposes only) that the US Securities Laws are potentially engaged and that there may potentially be US Securities Law Claims.

6.     I also note that an issue arises between the parties about which of the Defendants, other than StrongBlock (or Jenison Holdings SEZC), is a party to the arbitration agreement. I have not been instructed to and do not give any opinion on that issue. For the purposes of the rest of this declaration, when I refer to the parties to the TOS and/or the parties to the arbitration agreement, I intend to refer only to such

of the Plaintiffs and the Defendants that are found to be either parties to those agreements or entitled to insist on the rights and obligations arising under those agreements.

7. In preparing my opinion below, I have been provided with and considered the following material:

(a) Complaint filed on 26 August 2022;

(b) Memorandum of Law in Support of Defendants' Motion to Dismiss and Compel Arbitration filed on 14 October 2022;

(c) Plaintiffs' Opposition to Defendants' Motion to Dismiss and Compel Arbitration filed on 14 November 2022;

(d) Declaration of Andrew Johnstone filed on 14 November 2022; and

(e) A copy of the TOS which was in effect on 28 July 2021.

8. In my declaration below, I first explain the doctrine of judicial precedent in the Cayman Islands, which is relevant to the case law to which I refer. I then summarize my opinion on the issues above, before giving more detail on each aspect in turn. The legislation and cases to which I refer are exhibited to this declaration.

**B.     Judicial Precedent**

9. The doctrine of judicial precedent applies in the Cayman Islands, as it applies in England and the BVI. The court of final appeal in the Cayman Islands is the Judicial Committee of the Privy Council in London[2], whose decisions bind both the Cayman Islands Court of Appeal ("CICA") and the Grand Court. Decisions of the CICA also bind the Grand Court as the court of first instance.

10. There is a comparatively small body of case law in the Cayman Islands, comprising unreported decisions as well as cases reported in the Cayman Islands Law Reports. Especially where there is no applicable Cayman Islands case law, the Cayman Islands courts consider other common law

---

[2] Note that the Privy Council is the court of final appeal for various Commonwealth jurisdictions. A Privy Council opinion on, for example, a Bahamian appeal will not be strictly binding in the Cayman Islands, but it may be persuasive.

authorities[3], and in particular decisions of the English courts. Although not binding, including decisions of the English Supreme Court (formerly known as the House of Lords), they are persuasive insofar as they are not inconsistent with Cayman Islands legislation or case law, or based on statutory provisions which have no counterpart in Cayman Islands legislation. Decisions of the English Supreme Court or English Court of Appeal are highly persuasive.

11. There are relatively few court decisions in the Cayman Islands that relate to arbitration. Accordingly, English decisions would likely be relied on heavily in the Grand Court. That is particularly so given that the statutory framework for arbitration in the Cayman Islands (Arbitration Act 2012) is similar to the English legislation.

**C.    Summary of Opinion**

12. The parties have made an express choice of the system of the law of contract that is to apply to the TOS. They have chosen Cayman Islands law, without reference to its conflict of laws rules. That choice appears twice, once in a term entitled "General" and again in a term entitled "Applicable Law; Jurisdiction".

13. The arbitration agreement is separate from the TOS, even if contained within it as a clause. Neither the "General" or the "Applicable Law; Jurisdiction" clauses form part of the arbitration agreement. The arbitration agreement is contained solely within the provision "Dispute Resolution – Agreement to Arbitrate".

14. The parties have not made any express choice in relation to the system of contractual law that is to apply to the arbitration agreement. Neither the "General" or the "Applicable Law; Jurisdiction" clauses is such a choice. Based on the relevant principles, however, those clauses give rise to a rebuttable presumption that the parties have implicitly chosen that Cayman Islands law, without reference to its conflict of laws rules, is the system of contractual law that applies to the arbitration agreement. This distinction is important because it means that parts of the "Applicable Law; Jurisdiction" clause that go

---

[3] Not including the USA (except where, for example, a statutory scheme has been in part modelled on one found in the USA).

beyond the choice of the relevant law of *contract* play no part in the analysis of the parties' implied choice of the applicable law of the arbitration agreement.

15. The law governing the arbitration agreement goes to questions of the validity, enforceability and interpretation of the arbitration agreement. This may affect whether a right to refer a matter to arbitration has arisen, what are the rights and obligations of the parties in relation to any such reference, how a tribunal is to be empaneled, and how the arbitration will be conducted. The law governing the arbitration agreement does not itself require the arbitral tribunal to apply any system of law to the substance of the dispute that may be referred to it, i.e. the *lex causae*.

16. Section 55 of the Arbitration Act 2012 ("Cayman Arbitration Act") is a mandatory statutory provision that provides in relation to the law applicable to the substance of a dispute which is referred to the tribunal empaneled in a Cayman-seated arbitration. It is an important difference between the relevant legislative framework in the Cayman Islands, as compared to both England and the BVI. Section 55(2) provides that "*If or to the extent that the parties have not chosen the law applicable to the substance of their dispute or where the law chosen cannot apply to the substance of the dispute, the arbitral tribunal shall apply the law determined by the conflict of laws rules which it considers applicable*". There is no provision in the English or BVI legislation which requires an arbitral tribunal to override the law that parties have chosen to apply to the substance of the dispute, if that chosen law "*cannot apply*".

17. Mr Johnstone does not refer to section 55 in his declaration. Mr Johnstone's opinion (see e.g. Johnstone Declaration ¶ 22) is that the tribunal would be obliged, as a result of his view of the parties' choice, "*to apply Cayman Islands law to the claims made by the Plaintiffs under section 5 and 12(a)(1) [of] the Securities Act….*" He notes that there are "*no statutory provisions identical to these sections under the laws of the Cayman Islands*". He goes on to say at ¶ 23 that a tribunal would not therefore be able to apply US law to the substance of the dispute. If Mr Johnstone's view is correct that the parties have chosen Cayman Islands law to apply to the substance of all disputes, then section 55(2) would override that choice in relation to US Securities Law Claims (if any) and the tribunal would have to determine what law to apply by reference to conflict of laws rules.

5

18. In my opinion, section 55(2) is engaged but not for that reason. My view is that it applies because the parties have not chosen what law applies to the substance of a dispute arising under a foreign statute, such as the US Securities Laws. That is unsurprising given that the provisions of the TOS make clear that the parties contemplated different systems of law regulating their relationship and giving rise to enforceable rights and obligations. There is no part of the *arbitration agreement* ("Dispute Resolution – Agreement to Arbitrate") that requires the tribunal to apply a given system of law to the substance of any dispute referred to it. That contrasts with the clause that was before the US Court in *Eisen* (and the legislation in BVI does not require the overriding of party choice that is mandated under the Cayman Arbitration Act).

19. Nor, in my opinion, have the parties in any way excluded vindication of rights (if any) arising under the US Securities Laws (or any claims arising under a foreign statute). That involves an application of Cayman Islands principles of contractual interpretation, which would require (amongst other things) that such a clause be in clear words. Any clause that is found to exclude remedies arising by operation of law would be construed narrowly; such an exclusion may be implicit, but only if it is necessary to imply. In light of those principles, my view is that neither the arbitration agreement or the TOS have that effect.

20. In conclusion, my opinion is that the parties have not precluded vindication of any US Securities Laws Claims (if any arise). If their subject-matter is arbitrable, they must be arbitrated. The parties have agreed that the arbitrability of subject-matter is for the tribunal to determine. If such claims are not arbitrable, then the parties have agreed that the Cayman Islands Court would have exclusive jurisdiction to determine them. In neither of those cases would the relevant tribunal apply Cayman Islands law to the substance of such claims.

21. If it is held that the TOS does preclude pursuit of US Securities Law Claims (if any), that would not be to the exclusion of similar remedies. Mr Johnstone says that there are no statutory provisions in the Cayman Islands which are "*identical*" to Sections 5 and 12(a)(1) of the US Securities Act of 1933. I agree that there is no *identical* statutory equivalent. Materially similar remedies are available for materially similar wrongs, under Cayman Islands law. Depending on the facts, they may include causes of action such

as deceit, misrepresentation (fraudulent, negligent or innocent), and the separate cause of action known as negligent misstatement.

### D.      The Applicable Law of the Arbitration Agreement

22.     The parties to the TOS have made an express choice of the system of contractual law that is to apply to the TOS. In this regard, the parties have agreed that the applicable law of contract governing the TOS shall be Cayman Islands law without regard to conflict of laws rules. That appears twice in the TOS.

> "***General***
> *These Terms will be governed by the laws, restrictions, regulations and rules of the Cayman Islands without regard to its conflict of law provisions. With respect to any disputes or claims that do not fall within the agreement to arbitrate, set out above, you and StrongBlock agree to submit to the personal and exclusive jurisdiction of the Cayman Islands…*"
>
> "***Applicable Law; Jurisdiction***
> *These Terms and all Disputes (as defined below) are governed by and will be construed and enforced in accordance with the internal laws of the Cayman Islands without regard to choice-of-law rules. 'Dispute' is a controversy, disagreement, or claim between the parties with respect to, arising out of, or relating to these Terms in any manner whatsoever, whether in contract or tort, or whether legal or equitable. Any non-arbitrable Disputes shall be subject to the exclusive jurisdiction of the courts of the Cayman Islands…*"

23.     An arbitration agreement that is incorporated as a clause within another contract is a separate agreement. That is dictated by statute and also reflects the position at common law. Mr Johnstone cited section 4(5) of the Cayman Arbitration Act in his declaration, which provides "*An arbitration agreement which forms, or was intended to form part of, an agreement shall be treated as a distinct agreement*". Section 27(2) of the Cayman Arbitration Act similarly provides "*For the purpose of subsection (1)* [i.e. the arbitral tribunal being empowered to rule on its own jurisdiction, including any objections to the existence or validity of the arbitration agreement]*, an arbitration clause that forms part of a contract shall be treated as an agreement independent of the other terms of the contract.*"

24.     Mr Johnstone's declaration proceeds, however, on the basis (see e.g. Johnstone Declaration ¶ 21) that the "Applicable Law; Jurisdiction" clause in the TOS forms part of the arbitration agreement. He

7

does not refer to the "General" term in his declaration. In fact, neither clause forms part of the arbitration agreement. The arbitration agreement is contained only in one clause, entitled "Dispute Resolution – Agreement to Arbitrate".

25. What is the applicable law of the arbitration agreement? The principles for determining the applicable law of an arbitration agreement were summarized by the English Supreme Court in *Enka Insaat Ve Sanayi AS v OOO "Insurance Company Chubb"* [2020] 1 WLR 4117. The importance of that case has been reaffirmed in a later decision of the same court. Although not cited yet in the Cayman Islands, in my opinion the Cayman Court would apply the same common law principles.

26. The applicable law of an arbitration agreement is determined by looking to see if the parties have made an express choice or an implied choice of law. If no choice has been made either expressly or implicitly, the law that will apply will be the system of law with which the arbitration agreement has the closest connection. When parties have included an arbitration agreement as a clause within the main contract, such as in this case, there is a rebuttable presumption that the parties have implicitly chosen the same system of contractual law as applies to the main contract. At ¶ 170 of *Enka v Chubb*, the principles that apply at common law were summarized by Lords Hamblen and Leggatt giving the leading judgment, including the following:

> "*(iv) Where the law applicable to the arbitration agreement is not specified, a choice of governing law for the contract will generally apply to an arbitration agreement which forms part of the contract.*
>
> *(v) The choice of a different country as the seat of the arbitration is not, without more, sufficient to negate an inference that a choice of law to govern the contract was intended to apply to the arbitration agreement.*
>
> *(vi) Additional factors which may, however, negate such an inference and may in some cases imply that the arbitration agreement was intended to be governed by the law of the seat are: (a) any provision of the law of the seat which indicates that, where an arbitration is subject to that law, the arbitration will also be treated as governed by that country's law; or (b) the existence of a serious risk that, if governed by the same law as the main contract, the arbitration agreement would be ineffective. Either factor may be reinforced by circumstances indicating that the seat was deliberately chosen as a neutral forum for the arbitration.*"

27. In this case, the parties have not made any express choice of what law of contract applies to the arbitration agreement. Based on the principles above, the parties have impliedly chosen Cayman Islands law without regard to conflict of laws rules. The distinction between an express and an implied choice is important in this case. It means that parts of the "Applicable Law; Jurisdiction" clause that go beyond the choice of the relevant law of *contract* play no part in the analysis of the parties' implied choice of the applicable law of the arbitration agreement.

28. In my view it is important to bear in mind that the applicable law of an arbitration agreement means the system of contractual law that applies to the arbitration agreement. It goes to contractual questions including as to the validity, enforceability and interpretation of the arbitration agreement. This may affect whether a right to refer a matter to arbitration has arisen, what are the rights and obligations of the parties in relation to any such reference, how a tribunal is to be empaneled, and how the parties have agreed that the arbitration will be conducted.

29. The applicable law of the arbitration agreement is conceptually separate from and may be different to the law or laws that an arbitral tribunal, empaneled pursuant to that agreement, must apply to procedural matters (e.g. the law of the seat or *lex arbitri* or, to the extent relevant, the curial law). It is also conceptually separate from and may be different to the law or laws that the tribunal must apply to the substance of any dispute that has been the subject of a reference to arbitration, whether that is a claim in contract, unjust enrichment, tort, equity, or under statute (i.e. the *lex causae*).

**E.     Law applicable to the substance of any dispute**

30. Section 55 of the Cayman Arbitration Act is entitled "*Law applicable to substance of dispute*". It provides in part as follows:

> "*(1) The arbitral tribunal shall decide a dispute in accordance with the law chosen by the parties as applicable to the substance of the dispute.*
>
> *(2) If or to the extent that the parties have not chosen the law applicable to the substance of their dispute or where the law chosen cannot apply to the substance of the dispute, the arbitral tribunal shall apply the law determined by the conflict of laws rules which it considers applicable.*"

9

31.     I am not aware of any Cayman Islands decision that has considered this statutory provision. In my opinion, the effect of section 55(2) is that the tribunal is compelled to apply conflict of laws rules to determine the law applying to the substance of the dispute, in either of two situations:

(a)     if the parties have not chosen what law should apply to the substance of their dispute; or

(b)     if the parties have made a choice but "*the law chosen cannot apply*".

32.     These are mandatory statutory provisions in primary legislation. It is not possible to contract out of the effect of section 55, if (as in this case) the law of the seat is the Cayman Islands and the Cayman Arbitration Act applies. In this important respect, Cayman Islands law is different to the position under both English and BVI legislation. In particular, neither England or the BVI has a statutory provision that requires the tribunal to override the law that parties have chosen to apply to the substance of their dispute, "*where the law chosen cannot apply*", and instead to apply conflict of laws rules to determine the applicable law[4].

33.     If a tribunal were to apply the wrong law to the substance of the dispute, that would give rise to the possibility of appealing the award. That is because an appeal from an award is possible, with the leave of the Court, on any question of law arising out of an award made in the arbitration, under section 76 of the Cayman Arbitration Act. A point of law for such purposes would include applying the wrong law to the substance of the dispute.

### F.     Conflict of laws rules must be applied, on Plaintiffs' case

34.     Mr Johnstone has taken the view that the parties have chosen Cayman Islands law, without reference to conflict of laws rules, to apply to the substance of every dispute referred to arbitration. I disagree with that view for the reasons set out further below.

35.     As a result of his view of the parties' choice, Mr Johnstone said at Johnstone Declaration ¶ 22 that the tribunal would be obliged "*to apply Cayman Islands law to the claims made by the Plaintiffs*

---

4 See section 62 of the Arbitration Act (2020 Revision), which applies in the BVI; and section 46 of the Arbitration Act 1996, which applies in the UK.

*under section 5 and 12(a)(1) [of] the Securities Act…*" He notes that there are no statutory provisions in the Cayman Islands which are identical to those US Securities Laws. He then says, at ¶ 23, that a tribunal would not therefore be able to apply US law to the substance of the dispute.

36. Mr Johnstone has not referred to section 55 of the Cayman Arbitration Act. Even if, on a true construction of the arbitration agreement, the parties have in fact chosen Cayman Islands law to apply to the substance of any dispute, without reference to the conflict of laws rules, then that choice must be overridden by section 55(2) in any circumstances where "*the law chosen cannot apply to the substance of the dispute*".

37. If the substance of a dispute is a cause of action arising under the US Securities Laws and if – as I am instructed that the Plaintiffs contend – Cayman Islands law cannot apply because there are no identical provisions under Cayman Islands statute, then section 55(2) requires the tribunal to override that choice and, instead, to apply conflict of laws rules in order to determine what should be the law that applies to the substance of the dispute, notwithstanding the parties' express choice.

38. For any cause of action that arises under a US statute, that will have the result that the relevant US law applies. There is then the separate question of arbitrability, which I address further below. However, under the TOS the parties have expressly agreed that, for any matters that fall outside the scope of the arbitration agreement – including as a result of arbitrability of subject-matter – the Cayman Court shall have exclusive jurisdiction to hear them. Any rights arising in relation to the US Securities Laws can therefore be vindicated one way or the other.

### G.   No choice of law applicable to substance of any dispute under US Securities Laws

39. My opinion is that section 55(2) applies but not for the reason given in the section of my declaration immediately above. My view is that it applies because the parties have not chosen what law applies to the substance of every dispute referred to the tribunal and, in particular, any dispute arising under the US Securities Laws (or any foreign statute).

40. No part of the *arbitration agreement* requires the tribunal to apply a given system of law to the substance of any dispute arising under a foreign statute. For the reasons given above, the "Applicable

11

Law; Jurisdiction" clause forms no part of the arbitration agreement, which is contained only in the clause entitled "Dispute Resolution – Agreement to Arbitrate".

41.     The arbitration agreement does set out matters relevant to how disputes will be resolved. For example, the ICC Rules are to apply, subject to modifications agreed by the parties. But there is no provision that requires the tribunal to apply Cayman Islands law as the *lex causae* irrespective of the dispute referred to it. Within the arbitration agreement, any such requirement might have been included in this provision – for example, where I have marked "[***]".

> "FOR RESIDENTS OF THE UNITED STATES & OTHER JURISDICTIONS THAT ENFORCE BINDING ARBITRATION: YOU AND StrongBlock AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY BETWEEN YOU AND StrongBlock ARISING IN CONNECTION WITH OR RELATING IN ANY WAY TO THESE TERMS OR TO YOUR RELATIONSHIP WITH StrongBlock AS A USER OF THE SERVICE (WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, AND WHETHER THE CLAIMS ARISE DURING OR AFTER THE TERMINATION OF THE SERVICE) WILL BE DETERMINED BY MANDATORY BINDING INDIVIDUAL (NOT CLASS, REPRESENTATIVE, OR ACTION) ARBITRATION [***]. YOU AND StrongBlock FURTHER AGREE THAT THE ARBITRATION SHALL HAVE THE EXCLUSIVE POWER TO RULE ON HIS OR HER OWN JURISDICTION, INCLUDING ANYOBJECTIONS WITH RESPECT TO THE EXISTENCE, SCOPE OR VALIDITY OF THE ARBITRATION AGREEMENT OR TO THE ARBITRABILITY OF ANY CLAIM OR COUNTERCLAIM."

42.     I note that in *Eisen*, by contrast, the relevant wording formed part of the arbitration clause, which provided that "*In the event that any dispute whatsoever arises… in relation to or in any way in connection with the Contract, such dispute shall be finally **settled by binding arbitration in the British Virgin Islands applying British Virgin Islands law**…*" Further and more fundamentally, there is no equivalent of section 55(2) of the Cayman Arbitration Act in the BVI. I do not agree with Mr Johnstone when he says, at Johnstone Declaration ¶ 31, that "*there is no distinction between the underlying principles of BVI law relied on [in Eisen] and the principles of Cayman Islands law applicable to the present case.*"

### H.     No exclusion of vindication of US Securities Laws Claims

43.     Have the parties excluded vindication of US Securities Law Claims (if any), under the TOS and in particular the "Applicable Law; Jurisdiction" clause? That is a question to be determined by reference to applicable Cayman Islands law principles of contractual interpretation.

*Principles of Contractual Interpretation under Cayman Islands law*

44. The principles of contractual interpretation under Cayman Islands law and English law are substantially the same. In England, they have been set out in a number of recent cases before the Supreme Court, including *Rainy Sky v Kookmin Bank* [2011] 1 WLR 2900, which has been cited with approval and applied in the Cayman Court.

45. When interpreting a written contract, the court is concerned to identify the objective intention of the parties by reference to the meaning of the relevant words in their documentary, factual and commercial context. That meaning has to be assessed in the light of (i) the natural and ordinary meaning of the clause, (ii) any other relevant provisions of the agreement, (iii) the overall purpose of the clause and the agreement, (iv) the relevant facts and circumstances known or reasonably available to the parties at the time that the document was executed, and (v) commercial common sense, but (vi) disregarding subjective evidence of any party's intentions.

46. As explained in *Rainy Sky*, where there are two possible constructions, the Court is entitled to prefer the construction which is consistent with business common sense and to reject the other. In this regard, the quality of the drafting of the written agreement may be relevant. Lord Clarke in *Rainy Sky*, ¶ 26, cited with approval from another case, where it was said:

> "*13 . . . Speaking of a poorly drafted and ambiguous contract, Lord Bridge [in Mitsui Construction Co. Ltd. v. Att. Gen. (Hong Kong) (4)] said that poor drafting itself provides: 'no reason to depart from the fundamental rule of construction of contractual documents that the intention of the parties must be ascertained from the language that they have used interpreted in the light of the relevant factual situation in which the contract was made. But the poorer the quality of the drafting, the less willing the court should be to be driven by semantic niceties to attribute to the parties an improbable and unbusinesslike intention, if the language used, whatever it may lack in precision, is reasonably capable of an interpretation which attributes to the parties an intention to make provision for contingencies inherent in the work contracted for on a sensible and businesslike basis.*'"

47. In addition, specific principles apply to clauses that seek to exclude particular rights or remedies. Clear words are necessary before the Court will hold that a contract deprives a party of rights or remedies that it would otherwise have by operation of law. In an often-cited passage in *Stocznia Gdynia v*

*Gearbulk Holdings Limited* [2010] QB 27, Moore-Bick LJ said in the English Court of Appeal, "*The court is unlikely to be satisfied that a party to a contract has abandoned valuable rights arising by operation of law unless the terms of the contract make it sufficiently clear that that was intended. The more valuable the right the clearer the language will need to be*." Also in the English Court of Appeal, Evans LJ said in *BHP Petroleum Limited v British Steel* [2000] 2 All ER (Comm) 133 that it was "*… a general rule that the more extreme the consequences are, in terms of excluding or modifying the liability that would otherwise arise, then the more stringent the court's approach should be in requiring that the exclusion or limit should be clearly and unambiguously expressed*."

48. Further, once it is held that a clause in a contract does exclude a remedy, the clause will be narrowly construed. Although a particular remedy may be excluded by implication, that will only be so if the implication is a *necessary* one. See Lewison on *The Interpretation of Contracts* (7th ed., 2020), ¶¶ 12.155 to 12.157.

### No exclusion in the TOS of vindication of rights under foreign statutes

49. In my opinion, nothing in the TOS precludes a party from vindicating rights (if any) that arise under the US Securities Laws (or any foreign statute). Natural places for such a provision might have been either in the arbitration agreement itself or in a specific release clause, such as the "Indemnification and Release" clause that appears in the TOS.

50. My view is that the "Applicable Law; Jurisdiction" clause of the TOS, which is not part of the arbitration agreement for the reasons above, does not have that effect.

51. The clause must be interpreted in its documentary, factual and commercial context. It is highly relevant that the TOS expressly make clear throughout that the parties contemplated systems of law other than Cayman Islands law granting rights and imposing obligations on the parties. That can only be on the basis that the parties intended such rights and obligations to be enforceable. For example:

> "*YOUR BEHAVIOUR*
> As a condition to your use of the Site and Service, you agree not to… (g) use the Site or Service in an abusive way contrary to its intended use, to StrongBlock's policies and instructions, to any obligation you owe to any third party, or to any applicable law…"

14

> *You further represent, warrant, covenant, and agree that (a) you will not use, trade, sell or otherwise dispose of any item… in any manner that is contrary to, or in violation of, any and all applicable national, federal, state, provincial, and local laws, statutes, regulations, rules, codes, ordinances, orders, or directives ('Applicable Laws')… (c) and you will at all times comply with Applicable Laws.*
>
> *Proprietary Rights*
> *… Except as otherwise permitted under this Agreement, or under applicable law …"*

52.     The contextual analysis also involves considering both the "*Applicable Law; Jurisdiction*" clause and the "*General*" term. The former may, in reality, be no wider than the latter. Both may express only a choice of the system of contractual law that is to apply to the TOS. Reference in the "*Applicable Law; Jurisdiction*" clause to disputes "*whether in contract or tort*" may be intended to encompass causes of action related to the law of contract that are nevertheless part of the law of tort, such as fraudulent misrepresentation.

53.     Clear and unambiguous words would be needed if the clause was to exclude remedies arising by operation of law, for example under foreign statutes. There is no clear reference to any rights under statute being abandoned or being rendered unenforceable. Further, the clause would be narrowly construed: at most, it prescribes the system of law to apply in relation to contractual and tortious disputes, whether the rights relied on are legal or equitable. There is no express reference to causes of action arising under statute in the clause. Nor should it be implied, since the test is one of necessity and implication is not necessary.

### I.     Conclusion on US Securities Law Claims

54.     In my opinion, the parties to the TOS and the arbitration agreement have not excluded the possibility of vindicating rights and causes of action that arise under US Securities Laws.

55.     To the extent that such claims are arbitrable, they will be subject to the arbitration provision and must be determined in that forum. The parties have agreed in the arbitration agreement that the tribunal shall have the exclusive right to rule on jurisdiction, including with respect to the arbitrability of any claim.

If the tribunal considers that such claims are not arbitrable, then the parties have agreed that the Cayman Islands Court would have exclusive jurisdiction to hear such claims.

56. In neither of those cases, however, would the relevant tribunal apply Cayman Islands law to the substance of the dispute.

### J. Similar Remedies

57. If it is held that the TOS does preclude pursuit of US Securities Law Claims (if any), that would not be to the exclusion of similar remedies. Mr Johnstone says that there are no statutory provisions in the Cayman Islands which are "*identical*" to Section 5 and 12(a)(1) of the US Securities Act of 1933. I agree that there is no *identical* statutory equivalent. Under Cayman Islands law, however, materially similar remedies are available for materially similar wrongs.

58. Depending on the facts, available causes of action may include deceit, misrepresentation (fraudulent, negligent or innocent), and the separate cause of action known as negligent misstatement. If a person is induced to enter into a contract or purchase securities based on written or oral misrepresentations, for example in a prospectus or other document, then these causes of action (if proved) would entitle the plaintiff to recover damages. In general terms and subject to the specific principles that apply to each cause of action, the damages would put the plaintiff back in the position he would have been in, if the misrepresentation had never been made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 2, 2022 at Grand Cayman, Cayman Islands.

_Hamid Khanbhai_
_____